IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| ERIC THOMAS NARAMORE, | ) | |
| | ) | |
| Plaintiff; | ) | |
| | ) | |
| vs. | ) | 6:13-cv-00626-LSC |
| | ) | |
| CITY OF JASPER, ALABAMA, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OF OPINION

Plaintiff Eric Thomas Naramore ("Naramore"), a former firefighter employed by Defendant City of Jasper, Alabama ("Jasper"), brought this action, alleging violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, *et seq.*, and breach of contract. Jasper has moved for summary judgment (Doc. 16), and for the reasons discussed below, Jasper's motion is due to be granted in part and denied in part.

I.    BACKGROUND

Naramore worked as a firefighter from January 16, 2009, until April 14, 2011.[1]

───────────────

[1] Both parties also indicate that Naramore worked as a firefighter for Jasper during a previous term of employment. However, neither party has discussed his first period of employment in any detail.   Thus, it appears that the current FLSA action relates to this most recent period of

Beginning in 1985, Jasper adopted a 19-day "work period" for firefighters, where a firefighter would be scheduled to work 144 hours over each 19-day work period. Firefighters are scheduled to work in individual 24-hour shifts, and they are scheduled to work 6 shifts in a given 19-day period.

In order to keep its fire stations staffed at all times, Jasper divides its firefighters into three groups. Each group of firefighters works one 24-hour shift, and they then have 48 hours off while the other two groups work 24-hour shifts. This cycle repeats. However, based on this schedule one group of firefighters would actually be scheduled to work 7 shifts over a 19-day work period, totaling 168 hours. To prevent those firefighters from working over 144 hours in any given 19-day period, that group is awarded a "Kelly Day." A "Kelly Day" is an additional day off.

Although all firefighters are scheduled around a 19-day work period, they are paid bi-weekly. During a given 14-day "pay period," a firefighter works either 96 or 120 scheduled hours. According to Jasper, each firefighter is paid a fixed salary for working his or her scheduled hours. Because the firefighters are scheduled to work exactly 144 hours in a work period, they are also paid a separate overtime amount for

---

employment.

any hours they have worked beyond their scheduled hours in each pay period.[2]

In order to calculate the overtime pay rate per hour, Jasper divides the salary figure by 106. Jasper arrives at the 106 figure from comparing the number of hours that a firefighter would work over all 19-day work periods in one year and dividing that number by the number of 14-day pay periods in 1 year. After dividing by 106 to calculate an hourly rate for the pay period, Jasper multiplies this figure by 1.5 to reach the overtime rate. Finally, Jasper multiplies this overtime hourly rate by the number of overtime hours that the firefighter worked during that period to derive his overtime pay. Jasper claims that it paid Naramore in this fashion throughout his employment.

Although Naramore does not dispute the general practices for scheduling and paying firefighters, he contends that he was an hourly, not a salaried, employee. In support of this contention, he produced a pay stub from February 18, 2011, which indicated that he was compensated for 24 hours of work at an hourly rate that would equal $14.06, per hour. He also points to testimony from Kathy Chambless

---

[2] Jasper recorded the number of overtime hours its firefighters worked on various payroll sheets. (Doc. 18 at 12 ¶ 8.) The Court notes that Naramore included hundreds of pages of payroll documents in his submission opposing summary judgment, and from a brief review of these documents it is clear that some reference Naramore and many others do not. However, Naramore has only cited to these documents one time in his brief opposing summary judgment, and that citation was a general cite not to any particular portion of these documents. He also did not explain how these documents would prove particular elements of his claims. *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that a party must cite "to particular parts of materials in the record" when asserting that a fact is disputed).

("Chambless"), Jasper's city clerk, indicating that firefighters were compensated for unused sick or vacation time at an hourly rate and his own testimony that his pay was deducted for a suspension at an hourly rate. However, Naramore only produced three pay stubs from his employment with Jasper, and two of those pay stubs indicate that he was paid on a salary basis. Naramore also testified that no one ever told him that he was an hourly employee.

Over the course of his employment, Naramore was disciplined several times for failing to report to work on time. At one point, he was suspended without pay. Ultimately, Naramore was involuntarily terminated on April 14, 2011, and he filed suit in this Court on April 4, 2013.

Naramore claims that Jasper violated the FLSA in two ways: (1) Jasper did not pay Naramore enough overtime because it only paid overtime for hours over 96 or 120 hours in a pay period instead of after 80 hours; and (2) Jasper did not pay overtime at the correct rate because his overtime compensation was derived from a salary figure and not an hourly rate of $14.06 an hour. The complaint invokes federal question jurisdiction over these FLSA claims, 28 U.S.C. § 1331, and supplemental jurisdiction over his separate breach of contract claim pursuant to 28 U.S.C. § 1367.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); *see also Avenue CLO Fund, Ltd. v. Bank of Am., NA*, 723 F.3d 1287, 1294 (11th Cir. 2013). There is a "genuine dispute" as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. The trial judge should not weigh the evidence but must simply determine whether there are any genuine issues that should be resolved at trial. *Id.* at 249, 106 S. Ct. at 2511.

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "considering all of the evidence and the inferences it may yield in the light most favorable to the nonmoving party." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013) (citing *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *Id.* Although the trial courts must use caution when granting motions

for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986).

## III.   DISCUSSION

### A.   FLSA Claims

The FLSA provides:

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). A municipality like Jasper is an "employer" subject to the requirements of the FLSA. *See Knight v. Columbus, Ga.*, 19 F.3d 579, 583 (11th Cir. 1994) (citing *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 554–57, 105 S.Ct. 1005, 1019–21, 83 L.Ed.2d 1016 (1985)).

An employer must generally pay overtime after an employee's hours exceed 40 in a given workweek, but public employers can receive a partial exemption for firefighters and other emergency personnel. *Huff v. DeKalb Cnty., Ga.*, 516 F.3d 1273,

1277 (11th Cir. 2008) (emphasizing that "[t]he FLSA supplies an exemption to this

default rule for employees in fire protection activities"). Specifically, the FLSA states:

> No public agency shall be deemed to have violated [§ 207(a)] with respect to the employment of any employee in fire protection activities . . . if - -
>
> (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours . . . in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or
>
> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days,
>
> compensation at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(k) ("§ 207(k)"). The Department of Labor has calculated maximum

hours standards for each of the work periods between 7 and 28 days. *See* 29 C.F.R. §

553.230. A firefighter working a 19-day work period can work a maximum of 144 hours

before being paid overtime. *Id*.

As with other FLSA exemptions, the burden of proof is on the employer to

demonstrate that the § 207(k) partial exemption applies. *Huff*, 516 F.3d at 1278. Both parties agree that Naramore was employed by Jasper, a municipality, and that he worked as a firefighter. Thus, Naramore was engaged in "fire protection activities" for a "public agency" within the meaning of the § 207(k) exemption. *See Kohlheim v. Glynn Cnty., Ga.*, 915 F.2d 1473, 1476 (11th Cir. 1990) (noting that § 207(k) provides "special provisions applicable to public firefighters").

In order to actually adopt a § 207(k) exemption, though, Jasper must show that it adopted a work period that was between 7 and 28 days. *Birdwell v. City of Gadsden, Ala.*, 970 F.2d 802, 805 (11th Cir. 1992) (explaining that whether a city has adopted a § 207(k) exemption "turns on whether the city had a traditional workweek requiring overtime after 40 hours, or had adopted a seven day workweek under 7(k), only requiring overtime after 43 hours"). A municipality need not show that it has explicitly passed a resolution adopting a § 207(k) plan but instead need only show that the city has adopted a work period that falls within the permissible work periods in § 207(k). *Freeman v. City of Mobile, Ala.*, 146 F.3d 1292, 1297 (11th Cir. 1998).

Under the FLSA, "the term 'work period' refers to any established and regularly recurring period of work." 29 C.F.R. § 553.224. Here, Jasper asserted in its "Statement of Undisputed Facts" that it adopted a 19-day work period for firefighters

on October 1, 1985. (Doc. 16-1 at 4 ¶ 4.) Naramore "admitted" that this fact was true in his responsive brief opposing summary judgment. (Doc. 18 at 8 ¶ 4.)[3] Thus, Naramore has conceded that Jasper adopted a work period between 7 and 28 days, and summary judgment should be granted as to Naramore's claim that he was entitled to overtime after working 40 hours in a workweek, or 80 hours in a pay period, because Jasper adopted a § 207(k) exemption. *See Denney v. City of Albany*, 247 F.3d 1172, 1184 (11th Cir. 2001) (determining that summary judgment could be affirmed on a racial discrimination claim when the plaintiffs admitted the defendant's asserted "undisputed fact" that the relevant official did not consider race when making decisions).

Although Naramore asserts that his contract with Jasper, as exemplified by an employment handbook, entitled him to additional pay, he contends only that "the Handbook gives Plaintiff rights *greater* than those under the FLSA." (Doc. 18 at 17 (emphasis added).) Thus, the purported contract does not create an ambiguity as to the *work period* that Jasper adopted, and the § 207(k) exemption applies for FLSA purposes. *Cf. Birdwell*, 970 F.2d at 805–06 (distinguishing between rights under a

---

[3] Naramore does dispute Jasper's characterization of the Condrey Pay Plan, which became effective on January 1, 2007. However, neither party suggests that the Condrey Pay Plan modified, in any way, the work period for firefighters. Instead, the parties dispute whether that plan compensated firefighters on an hourly or salaried basis.

contract and rights under the FLSA but finding a factual dispute because the contract in that case could demonstrate that the city had not adopted a work period that would be covered by § 207(k)).

Moreover, Naramore's concession is consistent with the undisputed evidence. Chambless, the city clerk, indicated that Jasper formally adopted a 19-day work period in 1985. Naramore also testified at his deposition that he was regularly paid overtime when he worked over either 96 or 120 hours in a particular pay period. *See Avery v. City of Talladega, Ala.*, 24 F.3d 1337, 1344 (11th Cir. 1994) ("The detectives complain that they are 'not paid overtime until 171 hours of work are accumulated in the 28 day cycle.' Instead of proving their claim, that fact simply demonstrates that the City has adopted, and calculates the detectives' overtime in accordance with, a twenty-eight day work period." (footnote omitted)).

Whether a city has adopted a § 207(k) exemption is often a question of fact, but the Court should still grant summary judgment when the Plaintiff has not presented any "dispute of material fact for a jury to resolve." *Freeman*, 146 F.3d at 1297; *see also Adderly v. City of Atlanta*, No. 1:08-cv-2111-TWT, 2010 WL 2662719, at *2 (N.D. Ga. June 30, 2010) (determining that a city was entitled to summary judgment when it produced a human resources policy and affidavits from city officials supported a §

207(k) exemption, and the plaintiffs produced no rebutting evidence). Jasper's motion for summary judgment is due to be granted as to Naramore's FLSA claim that he was entitled to overtime after working 80 hours in a pay period. Naramore was only entitled to overtime pay when he worked over 144 hours in a given work period, and Jasper compensated him for this overtime by paying overtime whenever he worked over his scheduled hours.[4]

However, the Court must still consider whether Naramore was paid overtime at the correct rate. An employee is entitled to overtime compensation at a rate that is at least 1.5 times his "regular rate" of pay. 29 U.S.C. § 207(a)(1). Although employers may adopt various methods of compensation, the regular rate is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S.Ct. 1242, 1245 (1945). "The regular rate is thus an 'actual fact,' and in testing the validity of a wage agreement under the Act the courts are required to look beyond that which the parties have purported to do." *149 Madison Ave. Corp. v. Asselta*, 331 U.S. 199, 204, 67 S.Ct. 1178, 1181 (1947). When evaluating an unpaid overtime claim,

---

[4] Naramore admits that he was paid overtime beyond these points, stating at his deposition: "I was paid my overtime. When I was worked, I was paid my overtime over the 120 in a pay period and over the 96 in [the] other pay period. Any hours over that, yes, I was compensated time and a half." (Doc. 19-2 at 20.)

"[t]he FLSA places upon the employee-plaintiff 'the burden of proving that he performed work for which he was not properly compensated.'" *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1315 (11th Cir. 2013) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 327 U.S. 680, 686–87, 66 S.Ct. 1187, 1192 (1946)).

An employee's regular rate is always an hourly rate, and if an employee is paid on a salaried, as opposed to an hourly, basis, the employer must calculate an hourly rate from the salary. *See id.* at 1311–12. Jasper asserts that it paid Naramore a fixed annual salary in bi-weekly increments. It then paid him overtime in a bi-weekly pay period based on a divisor of 106 hours, or the average hours of work in each bi-weekly pay period that would equal the number of yearly hours worked in all the 19-day work periods. However, Naramore contends that he was an hourly employee entitled to an hourly wage of $14.06, which was based on a 40-hour workweek or 80-hour pay period.[5]

At the outset, the Court notes that even if Naramore alleged the existence of a

---

[5] Naramore's only opposition to Jasper's methodology is that he was an hourly employee entitled to a regular rate of $14.06, per hour, based on a forty hour workweek. He has not made any argument that Jasper's 106 divisor is an improper calculation of the regular rate *if* he was a salaried employee. Thus, any such arguments are abandoned, and the Court need not consider whether Jasper should have used a divisor that was neither 80 nor 106. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned.").

contract authorizing pay at this rate, the regular rate is "drawn from *what happens* under the employment contract." 29 C.F.R. § 778.108 (emphasis added). As the Court explained above, Jasper adopted a § 207(k) exemption based on a 19-day work period, and thus it was entitled to schedule its employees to work over 40 hours per workweek. *See Freeman*, 146 F.3d at 1297. Naramore also testified that he worked a regular schedule of 24 hours on a shift followed by 48 hours off and that he regularly worked either 96 or 120 hours in a bi-weekly pay period. (Doc. 19-2 at 18–20.) Thus, 80 would not be the proper divisor even *if* Naramore had been entitled to overtime after 80 hours worked. *See Singer v. City of Waco, Tex.*, 324 F.3d 813, 824–25 (5th Cir. 2003) (finding that the regular rate included both overtime and certain non-overtime hours when firefighters regularly accepted paychecks as compensation for a 120–120–96 hour schedule because the salaries were intended to compensate for all overtime and non-overtime hours).

However, the Court also reads Naramore's brief opposing summary judgment to assert that he was entitled to an hourly rate of $14.06, per hour, even if 80 is an improper divisor. First, he argues that Jasper could not pay him on a salary basis because he was suspended for failing to show up to work on time. Thus, his salary was improperly subject to reduction because of variations in the quality or quantity of the

work performed," and he could not be treated as a salaried employee. (Doc. 18 at 22 (quoting *Avery*, 24 F.3d at 1340 (emphasis removed).)

While it is true that employers invoking the exemption for executive, administrative, or professional employees must generally show that pay was not reduced for the quality or quantity of work performed, the *Avery* Court indicated that the same is not necessarily true of law enforcement employees. *See Avery*, 24 F.3d at 1342 n.3 ("[T]he validity of [that] regulation as it applies to law enforcement employees is not a question presented to us, nor is it one foreclosed by our decision.").[6] Whereas the employees in *Avery* were classified as executive employees, Naramore was classified as a firefighter, and this regulation does not apply to him. *See Davis v. City of Loganville, Ga.*, No. 3:04-cv-68, 2006 WL 1312411, at *1–*2 (M.D. Ga. 2006). Indeed, firefighters are often paid on a salary basis, and Jasper could compensate Naramore on a salary basis. *See Kohlheim,* 915 F.2d at 1480 (noting that employees may generally be compensated on a salary basis as long as it is consistent with the FLSA regulations).

Even if Jasper could compensate Naramore with a fixed salary, he contends that Jasper did not do so. Instead, he contends that a chart of hourly salary rates that had

---

[6] The limitations on payment by "salary" for executive employees are now found at 29 C.F.R. § 541.602.

been displayed at his fire station indicated that his regular rate was $14.06 per hour.[7]

Assuming *arguendo* that a chart of hourly rates was displayed at his fire station, Naramore testified that he was never told that *he* was an hourly employee. (Doc. 19-2 at 31.) Although he testified that the fire chief posted the chart, he has not produced any evidence that the fire chief had the authority to set pay rates for the fire department. (*Id.* at 21.) Thus, Jasper's "practice of expressing annual salaries in hourly terms does not create a contractual obligation for [Jasper] to pay that specific hourly wage," nor should it mean that this constituted Naramore's regular rate. *Kohlheim*, 915 F.2d at 1479.

In addition, though, Naramore produced one pay stub dated February 18, 2011, where he was compensated for 24 hours of work at an hourly rate of $14.06, and he attempts to assert that this yields a regular rate of $14.06, per hour. (Doc. 18-1 at 1.) Naramore also testified at his deposition that his salary was reduced by an hourly rate to account for his suspension. (Doc. 19-2 at 37.) However, the "regular rate" is derived from the hours worked in a *normal* workweek. *See Yongerman-Reynolds*

---

[7] Naramore produced several different rate charts in his submission opposing summary judgment. (Doc. 18-12 at 1–7.) Even though he indicates that the parties are uncertain as to which chart is the actual chart from the fire station, he assumes that a chart labeled "Pay Scale-Hourly" is that chart. (*Id.* at 7.) The Court assumes in Naramore's favor that this chart contained a set of hourly rates and was displayed in the fire station. *See Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1166 (11th Cir. 2013) (noting that on summary judgment the court must draw inferences from the facts in favor of the non-moving party).

*Hardwood Co.*, 325 U.S. at 424–25, 65 S.Ct. at 1245 (noting that the regular rate is based on a normal workweek and explained that an hourly amount "accurately mirrors all payments that [the employees] normally will receive from the [employer] during the workweek"). Naramore testified that his normal pay period consisted of either 96 or 120 hours, and thus it is clear that the 24 hours of "hourly" compensation were not part of a normal work or pay period. Moreover, Naramore was not compensated for any overtime during that pay period. Of the three pay stubs that Naramore produced, he was paid a "salary," according to the stub, during the one pay period he documented receiving overtime pay. (Doc. 18-1 at 2.)

In sum, Jasper has shown that it adopted a § 207(k) exemption and was required to pay overtime only after Naramore had worked over his 144 scheduled hours in a given work period, and he failed to produce any facts to create a dispute as to the applicability of the exemption. Additionally, Naramore failed to support his claim that he was entitled to overtime pay at 1.5 times a regular rate of $14.06, per hour. Summary judgment is due to be granted as to his FLSA claims.

### B.    Breach of Contract Claim

Alternatively, Naramore contends that Jasper's employee handbook constituted a contract, and it breached that contract by failing to pay him at an hourly rate of

$14.06, and failing to pay him overtime after he worked over 40 hours a week. The Court must consider whether to exercise supplemental jurisdiction over the contract claim. *See Ardestani v. U.S. Dep't of Justice, Immigration & Naturalization Serv.*, 904 F.2d 1505, 1515 (11th Cir. 1990) (noting that a district court must dismiss claims when it lacks subject matter jurisdiction). This claim implicates the Court's supplemental jurisdiction, codified at 28 U.S.C. § 1367 ("§ 1367"). "The statute reflects a dichotomy between a district court's power to exercise supplemental jurisdiction, § 1367(a), and its discretion not to exercise such jurisdiction, § 1367(c)." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742 (11th Cir. 2006).

Section 1367(a) authorizes supplemental jurisdiction when claims "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims are part of the same case or controversy if they "'derive from a common nucleus of operative fact.'" *Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta*, 701 F.3d 669, 679 (11th Cir. 2012) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138 (1966)). The Court must "take the nucleus of facts on which the federal question claims are based and compare it to the nucleus of facts on which the state law claims are based." *Id.* The claims here are part of the same case or controversy. Naramore challenges whether Jasper paid him

an appropriate salary, and many of the facts regarding how firefighters were paid relevant to the FLSA claims would also be relevant to his contract claims.

However, this is the beginning, and not the end, of the inquiry. *See Parker*, 468 F.3d at 743. Under § 1367(c), the district courts may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Any one of these grounds is reason to decline jurisdiction. *Parker*, 468 F.3d at 743. Generally, this Court should dismiss a pending state law claim for lack of supplemental jurisdiction after it has dismissed all pending federal claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.").

This case presents no exception to the general rule. Jasper acknowledges that the Court can decline to exercise its supplemental jurisdiction, stating: "Defendant expresses no opinion, and will abide by the decision of the Court, relative to the

question of whether the Court should consider this state law claim in the event that the federal claims are disposed of as the result of this Court's ruling on Defendant's Motion for Summary Judgment." (Doc. 16-1 at 15 n.2.) Additionally, Naramore would not be barred by the statute of limitations from re-filing this claim in state court. *See Hollander v. Nichols*, 19 So. 3d 184, 192 n.3 (Ala. 2009) (citing Ala. Code § 6-2-34(9) and noting that the statute of limitations for a breach of contract action is six years). While it may be unlikely that Naramore can recover on a breach of contract theory in light of the Court's rulings on his FLSA claims, the FLSA is a separate theory of recovery from a breach of contract claim. This Court has already overseen discovery over the claim, and a state court would need only try the case. Thus, the breach of contract claim is due to be dismissed without prejudice for lack of supplemental jurisdiction.

## IV.   CONCLUSION

For the reasons discussed above, Jasper's motion for summary judgment (Doc. 16) is due to be granted as to Naramore's FLSA claims. These claims will be dismissed, with prejudice. However, the Court will decline to exercise supplemental jurisdiction over the breach of contract claim, and this claim will be dismissed, without prejudice. A separate order consistent with this opinion will be entered.

Done this <u>23rd</u> day of <u>June 2014</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
174256